**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**


**UNITED STATES FIDELITY AND GUARANTY
COMPANY and FIDELITY GUARANTY INSURANCE
UNDERWRITERS, INC.**                                           **PLAINTIFFS**

**V.**                                              **CIVIL NO. 1:08CV242 HTW-LRA**

**THE PEOPLES BANK, BILOXI, MISSISSIPPI,
PAUL S. MINOR, MINOR AND ASSOCIATES, P.A.,
and WALTER TEEL**                                             **DEFENDANTS**


<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court are five motions.  Plaintiffs Fidelity Guaranty Insurance

Underwriters, Inc., and United States Fidelity & Guaranty Company have filed the

following motions:  a motion to disqualify counsel [docket no. 138];  a motion for entry of

a case management order [docket no. 145];  and a motion for status conference [docket

no. 165].  Defendant Paul Minor has filed a renewed motion for recusal [docket no. 151],

and defendants Minor and Minor and Associates, P.A., have filed a motion to strike the

plaintiffs' motion to disqualify counsel [docket no. 160].

This court has held a motion hearing as well as a status conference concerning

the motions before the court and has reviewed the filings of the parties as well as the

applicable law.  This court addresses all pending motions in this matter herein.

# I. Overview

The cause before the court involves three inextricably intertwined cases.  The first case, filed in 1998, is a civil case, *Peoples Bank, Biloxi, Mississippi v. United States Fidelity and Guaranty Company, et al.*, ("the *Peoples Bank* case") Civil Action No. C2402-98-925.  Peoples Bank, located in Biloxi, Mississippi, filed an action in Harrison County, Mississippi, Chancery Court against United States Fidelity & Guaranty Company ("USF&G"), its insurer.  In that lawsuit, Peoples Bank sought damages for USF&G's alleged failure to defend and indemnify the bank in association with two other lawsuits.

Representing Peoples Bank was the law firm of Minor and Associates, P.A., with Paul S. Minor serving as lead counsel.  Wayne Drinkwater of Bradley Arant Boult Cummings, LLP, represented USF&G, an insurance company of Maryland citizenship.

Judge Walter Teel presided over the lawsuit.  If the proceedings had developed into a trial, Judge Teel was to conduct a bench trial, not a jury trial; Judge Teel would be the sole finder of facts, as well as the judge of the law.

Attorney Minor and Judge Teel at the time had a financial arrangement whereby Minor had guaranteed the repayment of Judge Teel's loan from Peoples Bank.  Neither Minor nor Judge Teel revealed to USF&G or its counsel their financial arrangement.  In fact, the loan papers and the guarantee were maintained in a place where they could not be easily detected.

While this lawsuit was working its way to trial, another lawsuit, *United States*

*Fidelity and Guaranty Co. v. OmniBank*, No. 2000-FC-01015-SCT ("Omnibank"), had

ended up before the Mississippi Supreme Court. USF&G saw enough similarity of legal

issues with those in the *Peoples Bank* case that USF&G asked Judge Teel to stay the

*Peoples Bank* case until after the Supreme Court had announced a decision in

*Omnibank*. Judge Teel ordered a short stay, but dissolved the stay before the

Mississippi Supreme Court ruled.

One of the nine elected Mississippi Supreme Court Justices at the time was

Oliver Diaz. Justice Diaz enjoyed a close friendship with Minor and allegedly had a

hand in postponing the release by the Mississippi Supreme Court of the *Omnibank*

decision.

The decision by the Mississippi Supreme Court in *Omnibank* was favorable to

USF&G in *Peoples Bank*. The parties, however, had settled by this time. The parties

agreed in the *Peoples Bank* case to settle the case with a $1,500,000 payment by

USF&G to Peoples Bank.

The second case began in July 2003, when a federal grand jury indicted Paul

Minor, counsel for Peoples Bank in the *Peoples Bank* case; Teel, a former Chancery

Court Judge who had presided over the *Peoples Bank* case; John H. Whitfield, a former

state Circuit Court Judge; Oliver Diaz, a former Mississippi Supreme Court Justice; and

Jennifer Diaz, the former wife of Justice Diaz. The charges against each defendant

varied and included racketeering, fraud, bribery and extortion.


The overarching interrogatory hovering over this criminal case was whether

defendant Paul S. Minor had been buying justice. A prominent trial attorney, Minor had

obtained a number of impressive jury verdicts and he had received accolades for his trial acumen and tenacity. This indictment, however, cast a huge cloud over his courtroom accomplishments, that is, whether he had earned his victories fairly.

The indictment was an offspring of a routine, but surprise state audit of the Peoples Bank. The state auditor noticed that a number of loans were not supported by requisite collateral. The state auditor also noticed that some of these loans were issued to judges. Peoples Bank was asked to explain these questionable loans and why they were collateral naked.

What followed was the Peoples Bank's desperate attempt to satisfy the auditor's inquiry, since a bank could face harsh penalties for misappropriating the money of shareholders. Paul Minor did not want his guarantees made public so he undertook efforts to have others substitute their names on the guarantees for his. He had appeared before Judge Teel in the *Peoples Bank* case and reaped a $1,500,000 settlement. He had appeared before Judge Whitfield in *Archie Marks, et al v. Diamond Offshore Drilling Company*, Cause No. A-2401-99-63, and been awarded a judgment of $3,750,000.00. Justice Oliver Diaz had sat on the appeal of *Omnibank* when that lawsuit's ruling was pending.

The state auditor upon learning of Minor's guarantees asked the United States Attorney whether a lawyer could guarantee loans to judges before whom the lawyer was appearing. The United States Attorney decided to investigate and discovered more guaranteed loans to judges. The ones to Judge Teel and Judge Whitfield were, however, the main focus of the indictment in question. Eventually, Judges Teel and Whitfield and Minor were convicted of felonies. Justice Diaz was acquitted. The United

States Attorney's Office dropped the charges against his wife, Jennifer Diaz.

The third case, filed in October 2003, is the present case, in which USF&G and another insurance company, Fidelity Guaranty Insurance Underwriters, Inc. ("Fidelity Guranty") allege that the defendants in the present case – Minor; Minor and Associates, P.A., Minor's law firm; Teel; and Peoples Bank – committed foul play in *Peoples Bank* and caused USF&G wrongfully to pay a settlement amount of $1,500,000. This lawsuit relies heavily upon the events which led to the settlement of the *Peoples Bank* case and the proof in the criminal trial which led to the conviction of Minor and Judge Teel.

The above has been provided as a synopsis of the interlink among the three cases discussed. The discussion below of the various issues before the court will repeat some of the information revealed in the synopsis, but the synopsis as presented aims to ensure that the reader understands the chronology of the events and the parties' roles in the subject litigations.

## II.  The Criminal Case – Indictment

On July 25, 2003, the grand jury for the United States District Court for the Southern District of Mississippi indicted Paul Minor, John H. Whitfield, Oliver E. Diaz, Jennifer Diaz, and Walter W. Teel in relation to a scheme in which all the defendants allegedly concealed the fact that Minor, a licensed attorney in Mississippi, guaranteed loans for Judges Whitfield, Diaz and Teel in order to influence the judges' actions concerning cases in which Minor was involved. The grand jury returned a superseding indictment on February 20, 2004[1] and a second superseding indictment on October 19,

---

[1]3:03-cr-120, docket no. 154.

2004[2].

The counts against Minor included racketeering,[3] mail fraud,[4] wire fraud,[5] honest

[2]3:03-cr-120, docket no. 297.

[3]Title 18 U.S.C. 1962(c) provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

[4]Title 18 U.S.C. § 1341 provides in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.

[5]Title 18 U.S.C. § 1343 states in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

services fraud,[6] and bribery.[7]  The first superseding indictment additionally charged

Minor with extortion.[8]

Whitfield, Circuit Judge for the Second Circuit Court District of Mississippi, which

encompassed Hancock, Harrison and Stone Counties, Mississippi, was indicted for mail

fraud, wire fraud, honest services fraud, and bribery.

The grand jury initially indicted Oliver Diaz for mail fraud and bribery.  Under the

first superseding indictment, Diaz subsequently was charged with extortion.  At the time

---

[6]Title 18 U.S.C. § 1346 provides:

For the purposes of this chapter [Title 18 U.S.C. §§ 1341 et seq.], the term
"scheme or artifice to defraud" includes a scheme or artifice to deprive another of
the intangible right of honest services.

[7]Title 18 U.S.C. § 666 states in pertinent part:

(a) Whoever. . .
  (1) being an agent of an organization, or of a State, local, or Indian tribal
government, or any agency thereof--
. . . .
    (B) corruptly solicits or demands for the benefit of any person, or accepts or
agrees to accept, anything of value from any person, intending to be influenced
or rewarded in connection with any business, transaction, or series of
transactions of such organization, government, or agency involving any thing of
value of $ 5,000 or more; or
  (2) corruptly gives, offers, or agrees to give anything of value to any person,
with intent to influence or reward an agent of an organization or of a State, local
or Indian tribal government, or any agency thereof, in connection with any
business, transaction, or series of transactions of such organization, government,
or agency involving anything of value of $ 5,000 or more;

shall be fined under this title, imprisoned not more than 10 years, or both.

[8]Title 18 U.S.C. § 1951 provides in pertinent part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the
movement of any article or commodity in commerce, by robbery or extortion or
attempts or conspires so to do, or commits or threatens physical violence to any
person or property in furtherance of a plan or purpose to do anything in violation
of this section shall be fined under this title or imprisoned not more than twenty
years, or both.

of the events mentioned in the indictment, Oliver Diaz served as a Justice on the Mississippi Supreme Court, elected in 2000, to serve a term of eight (8) years.[9]

Jennifer Diaz was indicted for mail fraud and bribery. She was the former wife of Oliver Diaz. The government dismissed the case against Jennifer Diaz before trial.[10]

Teel was indicted for mail fraud, honest services fraud, and bribery. Teel, during the events of the indictment, held an elected seat on the Chancery Court in the Eighth Chancery Court District of Mississippi, which encompassed Hancock, Harrison and Stone Counties, Mississippi.

### III. The Civil Case -- Filing and Stay

On October 27, 2003, USF&G and Fidelity Guaranty filed the present case in this court against Peoples Bank;[11] Minor; Minor and Associates, P.A.; and Teel [docket no. 1]. The complaint alleges that the defendants colluded to cause the plaintiffs to wrongfully pay $1,500,000 in settlement of a lawsuit.[12]

Defendant Teel, as a Harrison County, Mississippi, Chancery Court Judge, presided over the *Peoples Bank* case, Civil Action No. C2402-98-925.[13] Prior to 1996,

---

[9] Challenger Randy "Bubba" Pierce defeated Diaz in the 2008 election.

[10] See 3:03-cr-120, April 26, 2005 Minute Entry (noting that the government submitted to the court a proposed order of dismissal without prejudice as to Jennifer Diaz) and Order [3:03-cr-120, docket no. 440] (granting government's motion to dismiss Jennifer Diaz without prejudice).

[11] The Peoples Bank was terminated as a party to this case on July 29, 2009, after entry on that same day of an order [docket no. 128] granting a joint motion for dismissal filed by the plaintiffs and defendant The Peoples Bank.

[12] Complaint at ¶¶ 1-7.

[13] Id. at ¶ 1-2.

USF&G provided liability coverage to Peoples Bank.[14] The *Peoples Bank* case concerned the issue of whether USF&G had an obligation to defend and indemnify Peoples Bank in two cases arising out of Peoples Bank's practice of force-placing collateral protection insurance on borrowers who allow their own insurance on collateral to lapse.[15]

Minor had arranged for and personally guaranteed a loan from Peoples Bank to Judge Teel and provided Judge Teel with cash in order to induce Judge Teel to favor Minor, Minor and Associates, and their clients, including Peoples Bank.[16] Judge Teel strongly urged settlement in the amount of $1,500,000 in favor of Peoples Bank, which was represented by defendant Minor and his firm, Minor and Associates, P.A. Judge Teel failed to disclose his financial relationships with Minor and Peoples Bank.[17]

Plaintiffs allege that they requested Teel to stay the *Peoples Bank* case in order to await the decision in a substantially identical case pending in the Mississippi Supreme Court, *United States Fidelity and Guaranty Co. v. OmniBank*, No. 2000-FC-01015-SCT, where the issue was whether the policy provided coverage for claims arising out of a bank's business practice in force-placing collateral protection insurance.[18] Allegedly, while serving as a Justice on the Mississippi Supreme Court, Oliver Diaz, co-defendant of Minor and Teel in the criminal case, wrongfully disclosed

---

[14]Id. at ¶ 15.

[15]Id. at ¶¶ 16-24.

[16]Id. at ¶ 2.

[17]Id. at ¶ 3.

[18]Id. at ¶ 56.

information directly or indirectly to one or more of the defendants in the present case about the status of and ruling in the *Omnibank* decision, and as a result, the defendants in the present case hurried settlement in *Peoples Bank* before the Supreme Court issued the *Omnibank* decision.[19] Plaintiffs contend that had Teel honored their request and stayed the *Peoples Bank* case until after the Supreme Court issued the *Omnibank* decision, USF&G would not have paid Peoples Bank because under the *Omnibank* ruling, USF&G had no legal obligation to defend or indemnify Peoples Bank in the action arising out of the policy.[20]

Plaintiffs raise the following claims:

| Count I. | Racketeering in Violation of the Racketeer Influenced Corrupt Organizations Act ("RICO"), Title 18 U.S.C. § 1962(c),[21] against Minor; |
|---|---|
| Count II. | Fraud against all defendants; |
| Count III. | Fraudulent Inducement against all defendants; |
| Count IV. | Unjust Enrichment against Peoples Bank; |
| Count V. | Negligent Misrepresentation against all defendants; |
| Count VI. | Negligence against Peoples Bank; |
| Count VII. | Conversion against Peoples Bank; |
| Count VIII. | Breach of the implied covenant of good faith and fair dealing against Peoples Bank; |
| Count IX. | Conspiracy to defraud against all defendants; |
| Count X. | Vicarious liability against Peoples Bank; and |
| Count XI. | Respondeat Superior against Minor and Associates. |

---

[19]Id. at ¶¶ 56-68.

[20]Id. at ¶ 69.

[21]Title 18 U.S.C. § 1962(c) states:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Plaintiffs seek compensatory damages in an amount not less than $2,500,000, consisting of the $1,500,000 USF&G paid to Peoples Bank by reason of defendants' wrongful acts and $1,000,000 in damage to USF&G's reputation; punitive damages in the amount of $10,000,000; and declaratory relief.

The case was assigned to the undersigned. On December 3, 2003, Peoples Bank filed a motion to stay the case until the criminal proceedings against Minor and Teel concluded, asserting that the criminal charges Teel and Minor faced were predicated on the acts that plaintiffs allege gave rise to defendants' liability in the present action.[22] On December 18, 2003, the Magistrate Judge granted the motion to stay the case until thirty days after the conclusion of the related criminal matter by "(a) dismissal of the charges against Minor and Teel in the event of dismissal or acquittal or (b) the ruling of this Court on any post-trial motions filed by Minor or Teel in the event of a conviction."[23]

## IV. Criminal Trial I

The jury trial of Whitfield, Teel, Minor, and Oliver Diaz commenced on August 4, 2005. On August 12, 2005, the jury reached a partial verdict.

Minor was tried for one count of racketeering, eight counts of mail fraud, one count of wire fraud, three counts of bribery and one count of extortion.[24] The jury found Minor not guilty as to four counts of mail fraud, one count of bribery and the count of

_____

[22]Motion to Continue, docket no. 19.

[23]Order, docket no. 25. See also Order, September 28, 2004, docket no. 29 (reiterating that the stay shall remain in effect until after the completion of the criminal trial).

[24]Jury Verdict, 3:03-cr-120, docket no.s 429, 430 and 431.

extortion.  The jury did not reach a unanimous decision as to the remaining counts.

Whitfield was tried for three counts of mail fraud, one count of wire fraud, and one count of bribery.  The jury found Whitfield not guilty as to the count of wire fraud and did not reach a verdict as to the remaining counts.

Teel was tried for two counts of mail fraud and one count of bribery.  The jury did not reach a verdict as to any of those charges.

Diaz was tried for three counts of mail fraud and one count of bribery.  The jury found Diaz not guilty on all counts.

## V.  Criminal Trial II

On December 6, 2005, the government filed a third superseding indictment.[25] The grand jury indicted Minor for conspiracy to commit fraud,[26] racketeering, mail fraud/honest services fraud, wire fraud/honest services fraud, and bribery.  Whitfield was indicted for conspiracy to commit fraud, mail fraud/honest services fraud, and bribery.  Teel was indicted for conspiracy to commit fraud, mail fraud/honest services fraud and bribery.

---

[25]3:03-cr-120, docket no. 454.

[26]Title 18 U.S.C. § 371 provides in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

The second trial of Minor, Whitfield and Teel commenced on February 26, 2007. The jury found the defendants guilty on all counts,[27] and this court sentenced the defendants on September 7, 2007.[28]  The sentences of Minor and Teel included joint and several liability for restitution to be paid to USF&G in the amount of $1,500,000 plus post-judgment interest.[29]

## VI.  The Civil Case Resumed

This court lifted the stay in the present matter on October 30, 2007.[30]  Plaintiffs filed a motion to amend their complaint [docket no. 54].  The amended complaint (1) modifies the fact section, adding events that plaintiffs learned of from the criminal trial and that occurred during the related criminal matter after the filing of the original complaint; (2) modifies the statement of the claims against the defendants to conform to the operative indictment, which was not issued until December 6, 2005, over two years

---

[27]Jury Verdict, 3:03-cr-120, docket no. 572. This court notes that the jury found that certain acts alleged within some counts were not proven. The jury found, however, sufficient acts proven in order to find the defendants guilty of all counts charged.

[28]The sentencing hearing took place on August 2-3, 2007, and September 6-7, 2007. The court issued the sentence for each defendant on September 7, 2007.
    All three defendants appealed. On January 22, 2010, the Fifth Circuit vacated all the convictions related to federal program bribery under Title 18 U.S.C. § 666, affirmed all other convictions and remanded for resentencing [3:03-cr-120, docket no. 766]. The defendants each filed a petition for writ of certiorari in the United States Supreme Court. See Notices of Order Denying Petitions for Writ of Certiorari with respect to Minor and Teel, docket no.s 779 and 780. On October 4, 2010, the United States Supreme Court denied each petition. This court resentenced the defendants on June 13, 2011.

[29]See September 7, 2007, minute entry, case no. 3:03-cr-120. The court ordered Minor to pay within thirty days of sentencing and ordered Teel to pay in monthly installments upon release from prison. See also Judgment as to Teel [criminal action no. 3:03-cr-120, docket no. 616, pp.5-6] and Judgment as to Minor [criminal action no. 3:03-cr-120, docket no. 618, pp.5-6].

[30]See October 30, 2007 text-only order denying motion to continue stay of proceedings [docket no. 37] and lifting the stay.

after the original complaint was filed; and (3) adds three counts under the RICO statute to include conspiracy under Title 18 U.S.C. § 1962(d)[31] and to raise allegations of conspiracy against all the defendants as opposed to solely against Minor.

On February 4, 2008, this court granted plaintiffs' motion to amend,[32] and, on that same day, plaintiffs filed their amended complaint [docket no. 58]. In the amended complaint, plaintiffs raise the following claims:

Count I.      Racketeering in Violation of RICO, § 1962(c), against Minor;
Count II.     Conspiracy to Engage in Racketeering in Violation of RICO, § 1962(d), against Minor, Teel and Peoples Bank;
Count III.    Racketeering in Violation of RICO, § 1962(c), against all defendants;
Count IV.     Conspiracy to Engage in Racketeering in Violation of RICO, § 1962(d), against all defendants;
Count V.      Fraud against all defendants;
Count VI.     Conspiracy to Defraud against all defendants;
Count VII.    Fraudulent Inducement against all defendants;
Count VIII.   Negligent Misrepresentation against all defendants;
Count IX.     Negligence against Peoples Bank;
Count X.      Unjust Enrichment against Peoples Bank;
Count XI.     Conversion against Peoples Bank;
Count XII.    Breach of the Implied Covenant of Good Faith and Fair Dealing against Peoples Bank; vicarious liability against Peoples Bank; and
Count XIII.   Respondeat Superior against Minor and Associates, P.A.

The amount and type of relief requested is the same as in the original complaint.

## VII. Jurisdiction

This court has diversity jurisdiction under Title 28 U.S.C. § 1332. Section 1332(a)(1) states that this court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $ 75,000, exclusive of interest

---

[31]Title 18 U.S.C. § 1962(d) provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section [§ 1962]."

[32]See February 4, 2008 text-only order granting unopposed motion to amend complaint.

and costs, and is between citizens of different States."  Section 1332(c)(1) provides in part that "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  USF&G is a Maryland corporation, and Fidelity Guaranty Insurance Underwriters, Inc., is a Wisconsin corporation.  Defendants are all Mississippi citizens.

This court has federal subject matter jurisdiction over plaintiff's RICO claims under Title 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  RICO is a criminal statute, Title18 U.S.C. § 1962,[33] but provides for civil damages for a party injured by reason of a RICO violation.[34]

Finally, this court has jurisdiction of plaintiffs' state law claims under Title 28 U.S.C. § 1367(a), which states that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . ."  The state law claims are fraud, conspiracy to defraud, fraudulent inducement, negligent misrepresentation, negligence, unjust enrichment, conversion, breach of the implied covenant of good faith and fair dealing, vicarious liability and respondeat superior.

---

[33]See footnote 19.

[34]Title 18 U.S.C. § 1964 states in pertinent part:

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter [Title 18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. . .

<h1 style="text-align: center">VIII.  Law and Analysis</h1>

**A.  Motion for Recusal**

    **1.  Procedural History**

        **a.  First Motion for Recusal**

Defendants Minor and Minor and Associates, P.A., filed the first motion for recusal in this case on August 9, 2008 [docket no. 90].  Defendants filed the motion pursuant to Title 28 U.S.C. § 455(a), which directs that "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The goal of § 455(a) is to avoid even the appearance of impropriety.  *United States v. Bremers*, 195 F.3d 221, 226 (5th Cir. 1999) (citing *Liljeberg v. Health Svcs Acquisition Corp.*, 486 U.S. 847, 860, 100 L. Ed. 2d 855, 108 S. Ct. 2194 (1988)).

In his first motion, Minor referred to the undersigned having presided over both the 2005 trial of Minor,[35] which resulted in a hung jury, and the 2007 trial of Minor, which resulted in Minor's conviction.  Minor stated that a Congressman, Minor and his two co-defendants in the criminal trial, and national and local media made allegations that the court made evidentiary rulings in the 2007 trial that differed substantially from those in the 2005 trial due to the court's political motivation to obtain Minor's conviction.  These

---

[35] During arguments on pretrial motions in the criminal case, at one point the undersigned Judge thought that the criminal defendants – Minor, Diaz, Whitfield, and Teel – were asking the undersigned to recuse.  The discussion focused on a possible transfer of the criminal case to the Mississippi Gulf Coast, the Southern Division of the Southern District of Mississippi.  The defendants stated that they were not making any recusal request and wanted the undersigned to preside over the trial.  The undersigned was convinced that he had no reason to recuse, but sought to clarify the record in case any of the defendants thought otherwise.

16

allegations, Minor contends, created the "appearance of impropriety" such that the undersigned should recuse. This court summarily denied the motion for recusal by order entered on September 30, 2008 [docket no. 124].

### b. Second Motion for Recusal

Minor filed a second motion for recusal on November 11, 2010 [docket no. 151]. In that motion, Minor added to the arguments in his first motion, relying on Title 28 U.S.C. § 144, which states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

This court held a hearing on November 8, 2010, during which it heard arguments on the motion for recusal as well as other motions. At the conclusion of the hearing, this court denied this second motion for recusal, too. Minor's counsel had difficulty understanding § 144 and had failed to file an affidavit and certificate of counsel in compliance with the statutory filing requirements of § 144. The court advised Minor's counsel that they could refile their motion if they followed the strictures of the statute.

### c. Third Motion for Recusal

On November 11, 2010, Minor filed a third motion for recusal. The content of the

second and third motions is the same.[36]  In both, Minor explicitly adopts the arguments

in his first motion for recusal [docket no. 90] and contends that under § 144, upon his

filing the motion for recusal, along with the affidavit and certificate of counsel, this court

no longer had jurisdiction of the motion and must transfer the motion to another judge.

### 2.  Standard

The parties herein dispute what criteria Minor must satisfy in order to trigger the

requirement that the undersigned send this motion for recusal to another judge to

decide.  Defendants repeatedly argue that § 144 requires that at the point the recusal

motion is filed, the judge must transfer the motion to another judge to decide the motion.

Plaintiffs respond that the undersigned must first determine: (1) whether the affidavit is

both timely and sufficient and (2) whether the certificate of counsel states that the

affidavit is made in good faith.

Section 144 prescribes that when a party "makes and files *a timely and sufficient*

*affidavit that the judge before whom the matter is pending has a personal bias or*

*prejudice* either against him or in favor of any adverse party, such judge shall proceed

no further therein, but another judge shall be assigned to hear such proceeding."

(emphasis added).  It is not the mere filing of an affidavit and certificate of counsel, as

the defendant suggests, that warrants transfer.  The transference of the case to another

judge must be preceded by a determination that the affidavit and certificate of counsel

comply with the requirements in § 144.  When a party files a § 144 motion, the judge

must pass on the sufficiency of the affidavit, but may not pass on the truth of the

---

[36]The actual motions [docket no.s 90, 151] are substantially the same. The language of
the memorandum briefs in support is virtually identical [docket no.s 91, 152].

18

affidavit's allegations.  *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 483 (5th Cir. 2003)

(citation omitted).  Plaintiffs argue that: (1) the affidavit Minor filed is neither timely nor

sufficient and (2) the certificate of counsel fails to state that the affidavit was made in

good faith.  This court agrees.

### 3. Analysis

#### a. Affidavit

Plaintiffs argue that Minor's affidavit fails to meet the first requirement of § 144 –

timeliness.  The general rule on timeliness requires that "one seeking disqualification

must do so at the earliest moment after knowledge of the facts demonstrating the basis

for such disqualification."  *United States v. Vadner*, 160 F.3d 263, 264 (5th Cir. 1998)

(citing *Travelers Ins. Co. v. Liljeberg Entrs., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)

(affirming the district court's denial of disqualification motions for untimeliness).  "[O]ne

seeking disqualification must do so at the earliest moment after knowledge of the facts

demonstrating the basis for such disqualification.  *Liljeberg*, 38 F.3d 1404.

Minor's affidavit, filed on November 11, 2010, refers to the undersigned having

presided over the 2007 trial and to the allegations by Minor, the media and others

referenced in Minor's first motion for recusal as the grounds for his accusation of judicial

bias.  Minor's trial concluded on March 31, 2007.[37]  This court sentenced Minor on

September 7, 2007.  The latest occurrence cited in the affidavit is an April 23, 2008,

article "questioning the actions of Judge Wingate."[38]  Minor has invoked § 144 for the

---

[37]3:03-cr-120, Minute Entry.

[38]Affidavit of Defendant Paul S. Minor, ¶ 5.

19

first time more than three years after knowledge of the events on which he bases his grounds for recusal. Minor's affidavit is, without question, untimely. *See Liljeberg*, 38 F.3d at 1411 (waiting until nearly a year after obtaining knowledge of the grounds for recusal renders a motion for recusal untimely).

Plaintiffs also argue that Minor's affidavit fails to meet the second requirement of § 144 — legal sufficiency. A legally sufficient affidavit must: (1) state material facts with particularity; (2) state facts that, if true, would convince a reasonable person that a bias exists; and (3) state facts that show the bias is personal, as opposed to judicial, in nature. *Patterson v. Mobil Oil Corp.*, 335 F.3d at 483.

Plaintiffs argue that Minor's affidavit does not state facts with sufficient particularity in that he refers to the conclusions and opinions of others and to his opinion that *he* believes the judge cannot be fair. Plaintiffs direct the court to *United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), which states:

> Section 144 specifies that "the affidavit" supporting a motion thereunder "shall state the facts and the reasons for the belief that bias or prejudice exists," and it does so for the best reasons. This provision. . . was designed to guard against groundless claims and the impositions they would inflict on the judicial process. To achieve that end, the courts have consistently held that the affidavit must meet exacting standards. It must be strictly construed; *it must be definite as to time, place, persons and circumstances. Assertions merely of a conclusionary nature are not enough, nor are opinions or rumors.*

(emphasis added) (internal citations omitted).

Minor's affidavit states that "Judge Wingate has a personal bias or prejudice against me as he presided over the criminal trial which directly relates to the conduct at issue in this civil proceeding."[39]  Minor further contends that "Judge Wingate's personal

---

[39]Affidavit of Defendant Paul S. Minor, ¶ 3.

bias and prejudice against me stems from the fact that he has acquired information about this case while presiding over the criminal trial," and "[t]his information would not be discoverable in this proceeding" or "available to an impartial judge presiding over this civil matter."[40] Minor provides allegations made by himself and others claiming inappropriate actions by the undersigned with respect to the Minor trial as grounds to show bias. Minor concludes that "I truly believe that Judge Wingate cannot be fair and that the bias he has formed over the past eight years of presiding over the criminal matter is too great to undue (sic)."[41]

The developed jurisprudence of § 144 is not friendly to Minor's motion. "[T]he judge is presumed to be impartial," and "unless facts are presented alleging 'personal' as opposed to 'judicial' bias, the judge need not recuse himself." *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir. 1976). In the case of *United States v. Seiffert*, 501 F.2d 974, 978 (5th Cir. 1974), [the Fifth Circuit] recognized that mere prior knowledge by the judge of facts concerning a party is not in itself sufficient to require disqualification. *Patrick*, 542 F.2d 381, 390. "Moreover, facts learned by a judge in his judicial capacity *cannot* be the basis for disqualification." *Id.* (emphasis added) (citing *United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir. 1976)). *See also Unger v. Taylor*, 368 Fed. Appx. 526, 536 (5th Cir. 2010) (Where the party alleged that the district court judge was biased because of his unfavorable rulings on the party's numerous previous motions, the alleged bias was determined to be "judicial," rather than

---

[40]Id. at ¶ 4.

[41]Id.

"personal" in nature; thus, the affidavit did not meet the requirements of §144.)

Minor cites *United States v. Merkt*, 794 F.2d 950 (5th Cir. 1986). Minor notes that the case states "[i]f an affidavit filed under § 144 is timely and technically correct, the factual allegations must be taken as true for purposes of recusal," and "[t]he trial judge may pass only upon the legal sufficiency of the affidavit; he may not consider the truth of the matters asserted therein." *Id.* at 960 (citation omitted). This case, however, supports plaintiffs' argument that the undersigned should determine the legal sufficiency of the affidavit *before* a transfer of the motion is appropriate. Minor's abbreviated reading of the *Merkt* case also missed the statement that, "[u]nder both § 144 and § 455, the alleged bias or prejudice must be personal and it must stem from an extrajudicial source which would result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.* at 960 (citing *United States v. Reeves*, 782 F.2d 1323, 1325 (5th Cir. 1986)).

Minor's affidavit is simply insufficient under §144; it utterly fails to meet the threshold for the undersigned to transfer the motion for recusal to another judge.

### b. Certificate of Counsel

Section 144 states that "[the affidavit] shall be accompanied by a certificate of counsel of record stating that it is made in good faith." Former Justice Diaz, now representing Minor, begins his certificate by stating: "I, Oliver Diaz, am counsel of record and represent the Defendant, Paul Minor. I make this declaration in good faith." Diaz's certificate states that he makes *his own* declarations in good faith, and then Diaz goes on to summarize Minor's affidavit. The certificate never states that Minor's affidavit is made in good faith.

22

The Fifth Circuit has stated with regard to the requirement of the certificate of good faith that:

> This is no meaningless provision; its purpose is obvious. A judge may not consider the truth or falsity of allegations in an affidavit of personal prejudice or bias, and the provision requiring the certificate of a member of the bar is a precaution against abuse of the privilege afforded by the act. The "good faith" certificate of counsel of record is indispensable and affidavits which are not accompanied by the certificate are insufficient and may not be filed.

*Beland v. United States*, 117 F.2d 958, 960 (5th Cir. 1941). Diaz's certificate also fails to meet the threshold under § 144. Therefore, § 144 does not require the undersigned to transfer this case for consideration of Minor's motion for recusal.

As aforementioned, under both § 144 and § 455, in order for recusal to be required, the party seeking recusal must establish that the alleged bias or prejudice is personal and stems from an extrajudicial source other than what the judge learned from his participation in the case. *Merkt*, 794 F.2d at 960. Minor has failed to make such a showing. This court finds that under both § 144 and § 455, Minor's motion for recusal is baseless. Accordingly, the motion for recusal is denied.

## B. Motion to Disqualify Counsel

### 1. Background

As noted above, the *Peoples Bank* case was in the Harrison County Chancery Court before Teel when the parties in this matter settled in 2001. Also noted previously, at the time, Oliver Diaz was serving as a Mississippi Supreme Court Justice, and the Mississippi Supreme Court was considering *Omnibank*, a similar case, which plaintiffs claim would have controlled the outcome in *Peoples Bank*.

On June 18, 2001, USF&G requested a stay in the *Peoples Bank* case to await

the *Omnibank* decision.[42]  According to plaintiffs, on July 30, 2001, Teel granted a stay for approximately thirty days but refused to delay the trial.[43]

Testimony during Minor's criminal trial indicated that on September 27, 2001, while the *Omnibank* decision was under consideration by the Supreme Court, Diaz met with Minor, in person, and then later that day made inquiry to Fred Banks, the writing justice, as to the status of the decision.[44]  Testimony also indicated that Diaz was informing Minor of the status of the case and, consequently, Minor was pressuring Teel to proceed hurriedly before the decision was issued.  Former Harrison County Chancellor J.N. Randall testified during the criminal trial that during a discussion he had with Teel, "Judge Teel said [the *Peoples Bank*] case had to be settled in a hurry because the [*Ominibank*] decision [when issued by the Mississippi Supreme Court ] would be adverse [to Minor]."[45]

On December 12, 2001, Minor filed a motion for partial summary judgment on behalf of Peoples Bank.  On December 14, 2001, Teel heard oral argument.[46]  On December 18, 2001, Teel entered an order granting Minor's motion in favor of Peoples Bank.[47]  The order held that USF&G had a legal obligation to defend and indemnify

---

[42]Amended Complaint, ¶ 59.

[43]Amended Complaint, ¶ 61.

[44]Partial Testimony Transcript of Laura Kuns, pp.4288-90, Motion to Disqualify Counsel, Exh. A; Partial Testimony Transcript of Donna Sexton, pp.4518-23, Motion to Disqualify Counsel, Exh. B.

[45]Minor Trial transcript, p.3317, Motion to Disqualify Counsel, Exh. C.

[46]Amended Complaint, ¶ 66.

[47]Amended Complaint, ¶ 67.

Peoples Bank in the two cases at issue.[48]  The only remaining issue was damages,[49] an issue that would be heard and decided by Teel.  Teel held a settlement conference on December 21, 2001, during which he strongly suggested a settlement amount of $1,500,000.[50]  USF&G decided to settle as the judge "suggested" and by February 7, 2002, USF&G had paid $1,500,000 to Peoples Bank.  The Mississippi Supreme Court issued the *Omnibank* decision on March 28, 2002, a decision which held that, in circumstances plaintiffs assert are similar to those in *Peoples Bank*, the insurer did not have a duty to defend.  According to plaintiffs, had the *Peoples Bank* case been stayed as they requested until the Mississippi Supreme Court issued the *Omnibank* decision, the ruling in *Omnibank* would have precluded Judge Teel from ruling that USF&G had an obligation to defend Peoples Bank and urging USF&G to settle.

## 2. Analysis

### a. Plaintiffs' Argument

Plaintiffs have designated Diaz as a witness.  After plaintiffs designated Diaz, on July 29, 2010, Diaz became counsel for Minor, resulting in a total of five persons representing Minor.  Plaintiffs argue that Diaz is a necessary witness and is, therefore, disqualified from participating as counsel in this case.

The Rules of the Southern District of Mississippi specifically adopt the Mississippi

---

[48]Id.

[49]Id.

[50]Amended Complaint, ¶ 71-74.

Rules of Professional Conduct.[51] L.U.Civ.R. Rule 83.5 ("An attorney who makes an appearance in any case in the district court is bound by the provisions of the Mississippi Rules of Professional Conduct and is subject to discipline for violating them.")  Plaintiffs base their motion for disqualification on Rule 3.7 of the Mississippi Rules of Professional Conduct,[52] which states:

> (a)    A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;
>
> (2)     the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3)     disqualification of the lawyer would work substantial hardship on the client.

Plaintiffs contend that not one of the three exceptions of Rule 3.7 applies in this case.

Plaintiffs allege that Teel knew the status of the *Omnibank* decision before it was made public and that his knowledge motivated him to urge settlement in Minor's favor in the *Peoples Bank* case.  Plaintiffs contend that Diaz should be disqualified because he is a necessary witness in that: (1) plaintiffs seek damages arising from Minor's improper influence over the state's civil justice system; (2) plaintiffs intend to question Diaz concerning the circumstances and timing of his inquiries with respect to the status of the *Omnibank* case and about any communication that he may have had with anyone about

---

[51]Title 28 U.S.C. § 2071(a) states in pertinent part that "all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business."

[52]The Mississippi Rules of Professional Conduct are identical to the American Bar Association's Model Rules of Professional Conduct in all relevant aspects. *United States v. Starnes*, 157 Fed. Appx. 687, 693-94 (5th Cir. 2005).

the same; and (3) Diaz is the only person with full, first-hand knowledge of his possible communication of the status of the *Omnibank* decision with Minor and any of the other defendants.[53]

### b. Diaz' Response

#### i. Mental Processes Rule

Diaz responds with four arguments for denying the motion. First, he argues that a judge cannot testify about mental processes in reaching a judicial opinion. "A judge may not be asked to testify about his mental processes in reaching a judicial opinion." *Robinson v. Commissioner*, 70 F.3d 34, 38 (5th Cir. 1995). Diaz contends that the plaintiffs seek to probe into his mental processes concerning his dissent in *Omnibank*.

The Fifth Circuit has stated with respect to the mental processes privilege, "a judge enjoys no special privilege from being subpoenaed as a witness." *United States v. Anderson*, 560 F.3d 275, 282 (5th Cir. 2009) (citing *Gary W. v. Louisiana, Dep't of Health & Human Resources*, 861 F.2d 1366, 1369 (5th Cir. 1988)); however, "it is imperative when [a judge] is called to testify as to action taken in his judicial capacity, to carefully scrutinize the grounds set forth for requiring his testimony." *Id.* If judges were subject to be called to testify as a result of every judicial action taken, "the judiciary would be open to frivolous attacks upon its dignity and integrity, and interruption of its ordinary and proper functioning." *Id.*

Plaintiffs do not seek information about the process by which Diaz reached his

---

[53] Memorandum Brief in Support of Plaintiffs' Motion to Disqualify Counsel, p.5; Plaintiffs' Supplemental Reply Brief in Support of Their Motion to Disqualify Counsel, pp.7-10.

ultimate dissent in the *Omnibank* decision. Plaintiffs make no indication that they seek to inquire into Diaz' mental process with respect to any judicial action taken. They seek, instead, to obtain information related to his possible extrajudicial communications with Minor about the *Omnibank* decision. The mental processes rule is not applicable with respect to such communications.

### ii. Federal Rule of Civil Procedure Rule 26

Secondly, Diaz contends that the evidence plaintiffs seek to obtain from Diaz is outside the bounds of Federal Rule of Civil Procedure 26. Rule 26(B)(1) sets the scope of discovery, stating that "[p]arties may obtain discovery regarding any *nonprivileged* matter that is *relevant* to any party's claim or defense. . ." (emphasis added). Diaz argues that USF&G seeks information from Diaz that is privileged under the Mississippi Code of Judicial Conduct and is not relevant.

Diaz contends that the information sought is privileged, according to the Mississippi Code of Judicial Conduct, Canon 3(B)(11), which states that "[a] judge shall not disclose or use, for any purpose unrelated to judicial duties, nonpublic information acquired in a judicial capacity." Diaz contends that this is the type of information about the *Omnibank* decision that plaintiffs seek. Therefore, Diaz argues, the information sought is privileged and is not discoverable.

Plaintiffs respond that the judicial canon does not apply to make the information sought privileged. They contend that discussions in which Diaz provided persons outside the court advance knowledge of the *Omnibank* status or outcome are not protected by the judicial canon as information "acquired in a judicial capacity."

Mississippi case law is void of interpretation or application of Canon 3(B)(11).

This court finds that the Canon does not prohibit plaintiffs from seeking the information they desire to obtain. Plaintiffs seek information concerning the timing of Diaz' inquiries about the status of the case and whether he communicated that information. This court does not find that the information sought would require Diaz to share nonpublic information acquired in a judicial capacity. The information sought by plaintiffs is not privileged under Canon 3(B)(11). Should an infringement of this rule arise as the case proceeds, this court would zealously enforce this or any such rule as necessary.

Diaz also contends that the information sought is irrelevant, and not discoverable, because this case is not about *Omnibank* or Diaz. Diaz argues that no "nexus" exists between USF&G's complaint and Diaz' mental deliberation regarding the unrelated *Omnibank* decision. As explained, plaintiffs do not seek information regarding Diaz' mental deliberation with respect to the *Omnibank* decision.

This court finds that the information sought concerning Diaz' possible communication with Minor about the *Omnibank* decision is relevant in that plaintiffs allege in their complaint that said communication was as an integral part of the scheme of fraud the defendants committed in the *Peoples Bank* case. Plaintiffs allege a direct connection between the timing of Minor's inquiries within the Supreme Court about *Omnibank*, the defendants' advance knowledge of the *Omnibank* decision, and Minor and Teel's scheme to commit fraud. The information sought by plaintiffs is certainly relevant.

Finding no valid argument to persuade this court otherwise, this court concludes that the information sought by plaintiffs is not privileged and is relevant and is, therefore, discoverable under Rule 26.

### iii.  Mississippi Rule of Professional Conduct 3.7

Thirdly, Diaz avers that he should be able to represent Minor under the third exception of Rule of Professional Conduct 3.7, which allows a lawyer who is a necessary witness to act as an advocate in a case where "disqualification of the lawyer would work substantial hardship on the client."  Rule 3.7(a)(3).  This court is not persuaded that the disqualification of one of five lawyers retained by Minor would "work substantial hardship" on Minor.  This argument is rejected.

Diaz also contends that his disqualification is contingent on the outcome of the balancing test in *Liberty Mut. Ins. Co. v. Tedford*, 644 F. Supp. 2d 753, 768 (N.D. Miss. 2009), where the Fifth Circuit stated that "application of the disqualification rule requires a balancing of the likelihood of public suspicion against a party's right to counsel of choice."  Diaz argues that Minor's right to have his counsel of choice outweighs any likelihood of public suspicion.

Plaintiffs respond that the *Tedford* balancing test in which the likelihood of public suspicion is balanced against a party's right to counsel of choice favors disqualification of Diaz because the appearance of impropriety is so great that it far outweighs any interest in Minor having Diaz as counsel.  Plaintiffs state:

> Diaz was Minor's co-defendant in the criminal proceedings which concerned the subject matter giving rise to this civil action. He was indicted under charges that he provided favorable assistance on appellate cases involving Minor in exchange for Minor's financial assistance. As was his right, Diaz never testified in his criminal trial. He has never answered why he inquired into the status of the *Omnibank* decision only hours after meeting with Minor. He has never testified whether he, or anyone he knows, informed Minor of the result of his September 27, 2001 inquiry into the status of *Omnibank*, or the later status of the *Omnibank* decision. He has never testified as to whether he knew about the pendency of the *Peoples Bank* case or whether he discussed that litigation with Minor, Teel or anyone else. Though he

clearly possesses information that is relevant to the claims asserted, Diaz
has expressed an unusual resolve to avoid testifying in this case. A clear
appearance of impropriety results if Minor is able to silence this witness by
appointing him as counsel.[54]

Plaintiffs add that the fact that Diaz did not appear as counsel for Minor until after

USF&G disclosed Diaz as a witness heightens the appearance of impropriety.  Applying

the *Tedford* balancing test, this court finds that the factors resolve against Diaz

participating as Minor's counsel.

### iv.  Only Available Source Rule

Lastly, Diaz argues that he is not a necessary witness because he is not the only

source from which plaintiffs can obtain the evidence they seek.  *Id.* at 766.  Diaz cites

*United States v. Starnes*, 157 Fed. Appx. 687 (5th Cir. 2005) and *Horaist v. Doctor's

Hosp. of Opelousas*, 255 F.3d 261 (5th Cir. 2001) for support.  In *Starnes*, the Fifth

Circuit held that "a lawyer is not 'likely to be a  necessary witness' when evidence

pertaining to each matter to which he could testify is available from another source" or

when the lawyer's testimony would be cumulative of other evidence. 157 Fed. Appx. at

693-94 (citing *Horaist*, 255 F.3d at 267).

The cases Diaz cite are distinguishable from the present case.  The lawyer and

possible witness in *Starnes* was potentially going to be called to testify as to a search in

which he had participated. 157 Fed. Appx. at 694.  The court concluded the lawyer was

not a necessary witness because he was not alone during the search, and the plaintiff

---

[54]Reply Brief in Support of USF&G's Motion to Disqualify Counsel, pp.8-9.

did not allege that the lawyer observed anything that was not observed by the other persons present during the search.  *Id.*  In *Horaist*, the court found that "[e]ach item of information that [the lawyer] could provide [was] already available from another source."

While various persons can testify to some portion of the conversations and actions at issue in which Diaz was involved, Diaz is the only person that can fully testify as to what he did, when, how often, with whom and what information was exchanged. Plaintiffs say they anticipate that Minor will attempt to assert his Fifth Amendment[55] right to not testify.  Accordingly, plaintiffs assert that Diaz has personal, unique knowledge of his inquiries in the Mississippi Supreme Court and associated communications with Minor that only Diaz would be able to testify to.  Cases cited by Diaz support plaintiffs' proposition.  *See, e.g. World Youth Day v. Famous Artists Merchandising Exch.*, 866 F. Supp. 1297, 1302 (D. Colo. 1994)[56] (lawyer was a necessary witness where he was the only individual with first-hand non-privileged knowledge of many relevant and material facts at issue, such as conversations).


Diaz contends that information plaintiffs seek is obtainable from other sources. Diaz does not, however, identify any such other source. Diaz is the only person in this case that has relevant, first-hand non-privileged knowledge of all the relevant details of all of his inquiries and conversations, conversations within the court as well as outside

---

[55] The Fifth Amendment to the United States Constitution states, in pertinent part that "[n]o person shall be. . . compelled in any criminal case to be a witness against himself."

[56] This case is cited in Diaz' Supplemental Brief in Opposition to Plaintiff's Motion to Disqualify Counsel, p.2.

the court, concerning *Omnibank.*

"The rule of disqualification is not mechanically applied in this Circuit." *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995) (citation omitted). "All of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id.* A litigant's right to counsel, however, is not absolute, and may be overridden for the sake of effective administration of the courts. *McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1263 (5th Cir. 1983). Having considered the facts of the case *sub judice* in the context of the law, this court finds that Diaz is likely to be a necessary witness and disqualification is warranted. Therefore, plaintiff's motion to disqualify counsel is granted.

### IX. Conclusion

For the foregoing reasons, this court DENIES the defendants' motion for recusal [docket no. 151] and GRANTS the plaintiffs' motion to disqualify counsel [docket no. 138]. Having granted plaintiffs' motion to disqualify counsel, this court DENIES the defendants' motion to strike plaintiffs' motion to disqualify counsel [docket no. 160].

This court has held a status conference in accordance with plaintiffs' request. Thus, this court GRANTS the plaintiffs' motion for status conference [docket no. 165].

Lastly, this court GRANTS the plaintiffs' motion for entry of a case management order [docket no. 145]. The parties will contact the assigned Magistrate Judge for a conference on such.

**SO ORDERED, this the 2nd day of April, 2012.**

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**

Civil Action No. 1:08-cv-242 HTW-LRA

Memorandum Opinion and Order
Order Denying Motion for Recusal
Order Granting Motion to Disqualify Counsel
Order Denying Motion to Strike Motion to Disqualify Counsel
Order Granting Motion for Status Conference
Order Granting Motion for Entry of Case Management Order